IN THE UNITED STATE DISTRICT COURT

STATE OF UTAH

| | |
|---|---|
| LAURIE NIELSEN, | REPORT & RECOMMENDATION |
| Plaintiff, | |
| vs. | Case No.  2:26-cv-00055 |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, SECRETARY OF HOUSING AND URBAN DEVELOPMENT AND COMPU-LINK CORPORATION, | District Court Judge David B. Barlow |
| | Magistrate Judge Dustin B. Pead |
| Defendants. | |

**INTRODUCTION**

The case is before the undersigned pursuant to a 28 U.S.C. § 636(b)(1)(B) referral from District Court Judge David Barlow.[1]

On January 21, 2026, Plaintiff Laurie Nielsen ("Nielsen" or "Plaintiff") filed her federal action against Defendants United States Department of Housing and Urban Development, the Secretary of Housing and Urban Development (collectively, "HUD") and Compu-Link

---

[1] ECF No. 27, Notice of Non-Consent.

1

Corporation ("Compu-Link").[2] Currently pending before the court are HUD and Compu-Link's

Motions To Dismiss For Failure To State A Claim.[3]

## **<u>BACKGROUND</u>**[4]

Neilsen's claims arise out of a Home Equity Conversion Mortgage ("HECM") loan

obtained by her parents, Glade and Ruth Nielsen.[5] The deed of trust for the loan was secured by

---

[2] ECF No. 1, Complaint.

[3] ECF No. 28, HUD's Motion to Dismiss; ECF No. 29, Compu-Link's Motion to Dismiss. Upon examination of the briefs and record, the court determines that oral argument would not materially assist with determination of the parties' pending motions. *See*, DUCivR 7-1(g).

[4] The factual background is taken from Plaintiff's Verified Complaint (ECF No. 1), its exhibits (ECF No. 1-1, Exhibit A; ECF No. 1-2, Exhibit B; ECF No. 1-3, Exhibit C; ECF No. 1-4, Exhibit D; ECF No. 1-5, Exhibit E; ECF No. 1-6, Exhibit F; Exhibit 1-7, Exhibit G; ECF No. 1-8, Exhibit H; ECF No. 1-9, Exhibit I; ECF No. 1-10, Exhibit J; ECF No. 1-11, Exhibit K), and public documents recorded with the Salt Lake County Recorder's Office. *See Commonwealth Property Advocates LLC v. Mortgage Elec. Registration System Inc.,* 680 F.3d 1194, 1201 (10th Cir. 2011) ("In evaluating a motion to dismiss, we may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference."); *Tal v. Hogan,* 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) (taking judicial notice of public record filed with the county clerk's office).

[5] ECF No. 1 at ¶¶ 1, 14. Section 255 of the National Housing Act ("NHA"), authorizes the Secretary of HUD to carry out a program of mortgage insurance that insures mortgagees who provide Home Equity Conversion Mortgage ("HECM") loan financing to elderly homeowners. *See* 12 U.S.C. § 1715z-20. A HECM loan is an FHA-insured "reverse mortgage". HECM mortgages permit elderly homeowners to convert "a portion of accumulated home equity into liquid assets." *See* 14 U.S.C. §1715z-20(a)(1). HECM mortgages are repaid in one payment, upon the death of the mortgagor(s), when the property is sold, or when no mortgagor occupies the property as a principal residence. *See* 24 C.F.R. § 206.27(c). Following the death of the borrower(s), a HECM loan becomes due and payable. *See* 24 C.F.R. § 206.27(c)(1). The borrower's heirs or estate may avoid foreclosure by paying off the loan in full, selling the property in a HUD-approved short sale, or providing the mortgagee with a deed in lieu of foreclosure. *See* 24 C.F.R. § 206.125(a).

the subject property located at 4971 S. Beaverbrook Lane, Unit 40, Salt Lake City, Utah 84117 (the "Property"), where Plaintiff's parents lived until their deaths.[6]

Plaintiff's parents obtained the HECM from Mountain America Credit Union ("MACU") on December 21, 2007.[7] The HECM was secured by a lien on the Property in the amount of $397,500.[8] Nielsen's parents executed the first HECM note and First Deed of Trust, which was recorded on December 28, 2007, in Salt Lake County Utah ("First DOT").[9] The first HECM note was guaranteed by HUD and required Plaintiff's parents to execute a second HECM note, secured by a Second Deed of Trust, which required repayment of the loan to HUD.[10] The second HECM note and Second Deed of Trust were recorded on December 28, 2007 ("Second DOT").[11] MACU assigned the First DOT to Financial Freedom Senior Funding Corporation ("Financial Freedom", and that assignment was recorded on December 28, 2007.[12]

---

[6] *Id.* at ¶¶ 1, 14, 19.

[7] *Id.* at ¶ 16; ECF No. 1-2, Exhibit B, December 21, 2007 Open-End Adjustable Rate Home Equity Conversion Deed of Trust ("First DOT").

[8] *Id.*

[9] *Id.* at ¶ 15. The First DOT states that the "covenants and agreements of this Security Interest shall bind and benefit the successors and assigns of Lender."

[10] *Id.* ECF No. 1-3, Exhibit C, Dec. 21, 2007, Open-End Adjustable Rate Home Equity Conversion Second Deed of Trust ("Second DOT").

[11] *Id.*

[12] ECF No. 28-1 at ¶ 6, Exhibit 1, Declaration of Jennifer Fingerlin in Support of HUD's Rule 12(b)(6) Motion to Dismiss (discussing Corporation Assignment of Mortgage/Deed of Trust/Security Deed between MACU and Financial Freedom Senior Funding corporation); ECF No. 28-2, Exhibit 2, Corporation Assignment of Mortgage/Deed of Trust/Security Deed.

On October 2, 2009, Financial Freedom assigned the First DOT to Mortgage Electronic Registration Systems Inc. ("MERS") "as nominee for Financial Freedom Acquisition LLC."[13] This 2009 Deed of Assignment was recorded on October 15, 2009.[14]

On March 19, 2024, MERS "as nominee for Financial Freedom Acquisition LLC, its successors and assigns," assigned and transferred to HUD "all right, title and interest" in the First DOT.[15] That assignment ("2024 Assignment") was recorded on March 27, 2024.[16]

After Nielsen's parents both died, the loan became due and payable in full.[17] HUD, through Compu-Link, its loan administrator, sent "acceleration notices and foreclosure-related correspondence" to Plaintiff "asserting that the reverse mortgage debt had matured and was immediately due and payable."[18] On September 15, 2025, Compu-Link sent Nielsen an e-mail, explaining:

> [a]s of September 10, 2025, insufficient action has been taken by the Estate or responsible party to resolve the outstanding Loan Balance following the Borrower's passing . . . . The initial six-month period for repayment has expired and any extension of time has been exhausted. Therefore, this loan will

---

[13] ECF No. 28-3, Exhibit 2, Corporate Assignment of Deed of Trust between Financial Freedom Senior Funding Corporation and MERS ("2009 Deed of Assignment").

[14] *Id.*

[15] ECF No. 1-6, Exhibit F, March 19, 2024 Assignment of Deed of Trust ("2024 Assignment").

[16] *Id.*

[17] ECF No. 1-2, Exhibit B. Pursuant to ¶9(a) of the First DOT, the loan became due and payable in full upon the death of the Borrowers. Paragraph 9(d) of the First DOT provides that HUD may commence foreclosure proceedings after a thirty-day notice period.

[18] ECF No. 1 at ¶ 35.

now be referred to Foreclosure for Proceedings to begin in accordance with policy and program guidelines.[19]

Plaintiff alleges she made good-faith attempts to communicate with HUD and Compu-Link "but was unable to obtain meaningful responses, clarification, or documentation substantiating Defendants' claimed authority to accelerate or foreclose."[20] Nielsen further asserts she did not receive "documentation establishing that HUD held a presently enforceable security interest in the Property" and HUD's correspondence "failed to provide Plaintiff with any administrative appeal rights, hearing procedures, or meaningful opportunity to contest Defendants' claimed authority prior to threatened foreclosure activity."[21] To date, no foreclosure of the Property has occurred.

On January 21, 2026, Nielsen filed her action against HUD and Compu-Link claiming the 2024 Assignment is invalid and, as a result, HUD is not the holder of the first HECM note and the First Deed of Trust and has no authority to foreclose.[22] Plaintiff also claims HUD's acceleration of the loan and communications about referral of the loan to foreclosure proceedings violated the Administrative Procedure Act and constituted ultra vires agency actions.[23]

---

[19] *Id.* at ¶ 39; ECF No. 1-9, Exhibit I, September 15, 2025 e-mail from Armand Etame, Compu-Link, HUD Division, to Plaintiff.

[20] ECF No. 1 at ¶ 43.

[21] *Id.* at ¶¶ 44-45.

[22] *See generally, id.*

[23] *Id.*

On May 1, 2026, Defendants HUD and Compu-Link filed motions to dismiss Plaintiff's complaint for failure to state a claim.[24]

## STANDARD OF REVIEW

In reviewing the complaint, the Court accepts all well-pleaded factual allegations and views the allegations in a light most favorable to the plaintiff, drawing all reasonable inferences in Nielsen's favor.[25]

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted."[26] To avoid dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[27] Although the court must accept well-pleaded factual allegations as true, the court need not accept as conclusory allegations or legal conclusions that are couched as factual allegations.[28] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[29] Rather, "a plaintiff must offer specific factual allegations to support each claim."[30]

---

[24] ECF No. 28; ECF No. 29.

[25] *See Wilson v. Montano,* 715 F.3d 847, 852 (10th Cir. 2013).

[26] Fed. R. Civ. P. 12(b)(6).

[27] *Hogan v. Winder,* 762 F.3d 1096, 1104 (10th Cir. 2014) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

[28] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570).

[29] *Id.*

[30] *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Twombly,* 550 U.S. at 555 (plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.").

Because Nielsen proceeds *pro se*, the court construes her filings liberally and holds her "to a less stringent standard than formal pleadings drafted by lawyers."[31] Nonetheless, Plaintiff must still "follow the same rules of procedure that govern other litigants,"[32] and the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[33]

When evaluating a motion to dismiss under 12(b)(6), a court may consider exhibits to the attached to the complaint and documents incorporated by reference "without converting the motion to dismiss into a motion for summary judgment."[34] In doing so, a court may take judicial notice of facts that are a matter of public record.[35] Judicial notice may be taken of an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[36] Generally, court dockets, orders and other official records are properly subject to judicial notice.[37]

---

[31] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[32] *Garrett v. Selby, Connor, Maddux & Hamer,* 425 F.3d 836, 840 (10th Cir. 2005) (quotation omitted).

[33] *Smith v. United States,* 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir. 1997)).

[34] *Commonwealth,* 680 F.3d at 1201; *Smith,* 561 F.3d at 1098 (10th Cir. 2009); *Tal,* 453 F.3d at 1265.

[35] *Hall,* 935 F.2d at 1110.

[36] Fed. R. Evid. 201(b).

[37] *See Sexton v. Evergreen Village Community, MHC, LLC,* 2020 U.S. Dist. LEXIS 257701, at *2 (D. Utah July 20, 2020); *see also United States v. Henson,* 9 F.4th 1258, 1267 (10th Cir. 2021);

**DISCUSSION**

Currently pending before the court is Defendant HUD and Compu-Link's motions to dismiss for failure to state a claim.[38] Each motion is addressed in detail below.

## I.   HUD's Motion to Dismiss

HUD moves for dismissal of Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[39] Nielsen's pleading raises claims against HUD for quiet title, violation of the Administrative Procedures Act, Declaratory Judgment and Ultra Vires. Each claim is addressed below.[40]

---

*Koenig v. Bank of America N.A.,* 2016 U.S. Dist. LEXIS 35526, at \*7 (E.D. Cal. Mar. 18, 2016) (internal quotation omitted) (unpublished) ("[C]ourts may take judicial notice of the dates, parties, and legally operative language of [a deed of trust and an assignment] because they are not subject to reasonable dispute.").

[38] ECF No. 28; ECF No. 29.

[39] Fed. R. Civ. P. 12(b)(6).

[40] In her response, Neilsen objects to two specific documents relied upon by HUD in support of its motion for dismissal: (1) the December 2007 Assignment between the original lender (MACU) and Financial Freedom Senior Funding Corporation (FFSFC), and (2) the October 2009 Assignment between FFSFC and Mortgage Electronic Registrations Systems, Inc. (MERS). *See* ECF No. 30 at 13-14, Plaintiff's Opposition to Defendant HUD's Rule 12(b)(6) Motion to Dismiss. Both documents were recorded in the Salt Lake County Recorder's Office.

Courts routinely take judicial notice of undisputed facts contained in publicly recorded property documents such as the assignment presented here. *Sexton,* at \*2; *see also U.S. Secretary of Housing and Urban Development v. Ealy,* 2026 U.S. Dist. LEXIS 48512, at \*16 (D. MD. Mar. 9, 2026) (unpublished) (judicially noticing undisputed deed of trust and assignments). Additionally, Federal Rule of Evidence 201(b) allows a court to "judicially notice a fact that is not subject to reasonable dispute because . . . it can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *See* Fed. R. Civ. P. 201(b); *see also infra* pp. 6-7.

For these reasons, judicial notice and consideration of the 2007 and 2009 Assignments is appropriate.

### 1. Quiet Title

Nielsen brings her first cause of action for quiet title under 28 U.S.C. § 2410(a)(1).[41] Section 2410(a)(1) creates a right to quiet title to property on which the United States holds a mortgage, stating:

> Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter . . . to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien.[42]

Nielsen's quiet title claim rests on the assertion that HUD does not hold a valid and enforceable lien against the Property. Plaintiff alleges that HUD's HECM interest in the Property is unenforceable because the 2024 Assignment, transferring the lien from the previous lender to HUD, is void. However, Plaintiff's own exhibits contradict her claims of invalidity.

Plaintiff admits the original lien against the Property is valid and notes that it has not been removed from title.[43] Rather, Nielsen bases her unenforceability allegation on the claim that Financial Freedom Acquisition LLC transferred or sold its HECM portfolio and therefore did not have an assignable interest in the deed of trust, or, in the alternative, that Financial Freedom Acquisition LLC lacked the legal capacity to effectuate an assignment.[44] More specifically, Plaintiff states that at the time of assignment, "Financial Freedom Acquisition, LLC had long

---

[41] ECF No. 1 at ¶¶ 51-57.

[42] 28 U.S.C. § 2410(a)(1), Actions Affecting Property On Which United States Has Lien.

[43] ECF No. 1 at ¶ 28 (stating "No Deed of Reconveyance or release of lien specifically identifying the December 21, 2007 Home Equity Conversion Mortgage ("HECM") reverse mortgage has ever been recorded in the Salt Lake County land records.").

[44] *Id.* at ¶ 54.

since ceased originating or holding reverse mortgage loans, had transferred or sold its HECM

portfolio, and lacked any present ownership interest, servicing rights, or assignable interest in the

subject deed of trust."[45] Nielsen goes on to assert that "[b]ecause MERS's authority, if any is

strictly derivative of the rights of its named principal, and Financial Freedom Acquisition, LLC

lacked the legal capacity or interest necessary to effectuate an assignment in March 2024, the

purported assignment was executed without lawful authority and is void, or alternatively

voidable, and of no legal effect."[46]

MERS is a "private electronic database that tracks the transfer of the beneficial interest in

home loans"[47] and was "designed to avoid the need to record multiple transfers of the deed by

serving as the nominal record holder of the deed on behalf of the original lender and any

subsequent lender."[48] As "nominee," MERS plays a role in the transfer of beneficial interests.

Specifically,

> MERS is designated in the deed of trust as a "nominee" for the lender and the
> lender's successors and assigns as well as the "beneficiary" of the deed. MERS
> thus holds legal title to the security interest. "If the lender sells or assigns the
> beneficial interest in the loan to another MERS member, the change is
> recorded only in the MERS database, not in county records, because MERS

---

[45] *Id.* at ¶ 31.

[46] *Id.* at ¶ 33.

[47] *Commonwealth,* 680 F.3d at 1197, n.1.

[48] *Id.* (quoting *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1039 (9th Cir. 2011));
*see also Rosa v. Mortgage Electronic Registration System Inc.,* 821 F. Supp. 2d 423, 429 (D.
Mass. Sept. 9, 2011) (citing *In re Agard,* 444 B.R. 231, 247 (Bkrptcy. E.D.N.Y. 2011) ("MERS
was created to facilitate the mortgage finance industry and to alleviate the 'slow and burdensome
recording processes' required for transferring and assigning residential mortgages.")).

continues to hold the deed on the new lender's behalf." Thus, no recordation takes place unless the trust deed is transferred to an entity that is not a member of MERS.[49]

Considering Nielsen's claim in this context, even if Financial Freedom Acquisition LLC lacked an "ownership interest, servicing rights, or assignable interest" in the First DOT at the time of the 2024 Assignment, Plaintiff fails to provide any support for her position that MERS, "as nominee for Financial Freedom Acquisition LLC, *its successors and assigns,*" could not assign the HECM to HUD in 2024.[50] To the contrary, courts have found that even when a lender is out of business, MERS, as nominee for the lender and its successor and assigns, can still assign loans and act on behalf of the defunct lender.[51] Thus, even assuming the truth of Nielsen's allegation that Financial Freedom Acquisition LLC was out of business by 2024, MERS was acting on behalf of Financial Freedom Acquisition LLC's successors and assigns and

---

[49] *Id.*

[50] ECF No. 1-6 (emphasis added).

[51] *Davis v. Rama Capital Partners, LLC,* 2024 U.S. Dist. 35622, at *13 (N.D. Cali. Feb. 29, 2024) ("The fact that ACG as the lender had dissolved did not affect MERS's ability to take action."); *Ghuman v. Wells Fargo Bank, N.A.,* 989 F. Supp. 2d 994, 1001 (E.D. Cal. 2013) ("Plaintiffs have provided no authority and the Court's research reveals no authority to suggest this power [of MERS to act as nominee of the lender] is affected when a lender becomes defunct"; "[t]hus, in our present case, because the power of MERS as nominee under the Deed of Trust was not impaired in any way by the Lender becoming defunct, there is no basis upon which the subsequent assignment of the Deed of Trust to Deutsche Bank can be found invalid."); *Kiah v. Aurora Loan Services LLC,* 2010 U.S. Dist. LEXIS 121252, at *12 (D. Mass. March 4, 2011) ("The plain language of the mortgage states that MERS was acting as nominee for First Magnus and its 'successors and assigns.' First Magnus' dissolution would not prevent it successors and assigns, including Aurora, from seeking transfer of the mortgage from MERS. Accordingly, the dissolution of First Magnus would not and could not prevent Aurora from obtaining an assignment of the mortgage from MERS . . . ."); *Rosa v. Mortgage Electronic Registration System Inc.,* 2011 U.S. Dist. LEXIS 110151, at *15 (D. Mass. Sept. 9, 2011) ("The dissolution of the original lender does not affect MERS' authority to assign a mortgage."), *report and recommendation adopted,* 821 F. Supp. 2d 423 (D. Mass. Sept. 27, 2011).

consequently had the authority to transfer the First DOT to HUD.

Additionally, Utah's District Court previously rejected Plaintiff's argument that MERS does not have the right to exercise its interest under the First DOT.[52] In this case, the First DOT provides, "[t]he covenants and agreements of this Security Instrument shall bind and benefit *the successors and assigns* of Lender."[53] Moreover, the 2009 Deed of Assignment from Financial Freedom Senior Funding Corporation specifically does "convey, grant, sell, assign, transfer and set over the described deed of trust together with certain note(s) described therein together with all interest secured thereby, *all liens, and any rights due or to become due* thereon to Mortgage Electronic Registration System Inc. ('MERS'), a Delaware Corporation, *its successors or assigns,* as nominee for Financial Freedom Acquisition, LLC."[54] This language demonstrates that all rights given to the original lender in the First DOT were properly assigned to MERS, as the nominee for Financial Freedom Acquisition LLC, and MERS had the authority to transfer those same rights to HUD in the 2024 Assignment.

Here, the public documents, including those incorporated by Neilsen into the complaint, evidence an unbroken chain of title. This chain links the First DOT held by MACU to HUD through three recorded assignments and show that the 2024 Assignment was valid. Accordingly,

---

[52] *See Burrows v. LoanLeaders of America Corporation,* 2014 U.S. Dist. LEXIS 159408, at *8 n. 30 (D. Utah Oct. 7, 2014) (listing cases) *report and recommendation adopted,* 2014 U.S. Dist. LEXIS 158929 (D. Utah Nov. 10, 2014); *Rhoads v. BAC Home Loans Servicing LP,* 2011 U.S. Dist. LEXIS 48844, at *5-6 (D. Utah May 4, 2011) (MERS had authority to assign the trust deed to the subsequent lien holder).

[53] ECF No. 1-2 (emphasis added); *see Rhoads,* at *4 (MERS was acting as "a nominee for Lender and Lender's successor and assigns.").

[54] ECF No. 28-2 (emphasis added).

for the reasons stated, the court recommends dismissal of Plaintiff's quiet title claim for failure to state a claim.

### 2. Administrative Procedure Act

Nielsen brings her Administrative Procedure Act ("APA") claim under three different subsections of 5 U.S.C. § 706(2).[55] In relevant part, Section 702 provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be—"

> (A)   arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .
> (C)   in excess of statutory jurisdiction, authority, or limitations or short of statutory right; [or]
> (D)   without observance of procedure required by law.[56]

Upon review, Nielsen fails to allege a cause of action under any of the three identified provisions.

First, Nielsen's APA claim is not based on a final agency action, and the APA limits its judicial review to only those agency actions that are "final".[57] Under the APA "agency action" is defined as "the whole or a part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."[58] To be final, an agency action must: (1) "mark the consummation of the agency's decision-making process" and (2) either determine "rights or

---

[55] 5 U.S.C. § 706(2), Scope Of Review.

[56] *Id.*

[57] *Id.*

[58] *Id.* at § 551(13).

13

obligations" or result in "legal consequences."[59] None of the actions that Nielsen challenges do satisfy this definition.

Plaintiff claims HUD's actions "in asserting lien enforcement authority, accelerating the alleged reverse mortgage debt, and threatening foreclosure constitute final agency action subject to judicial review under the APA."[60] But in this case HUD has not foreclosed on its lien. After Nielsen's parents passed away, HUD accelerated the loan based on the language in the loan documents.[61] HUD gave Plaintiff time to satisfy the debt and, after the time for doing so expired, referred the case to the loan servicer.[62] The only "action" HUD has taken is to inform Ms. Nielsen via e-mail that the Property has been referred for foreclosure and to refer the case for non-judicial foreclosure.[63] Accelerating the loan and referring the case for nonjudicial disclosure do not determine the rights or obligations of any party or result in any immediate legal consequences.[64] As a result, these steps do not fall within the definition of "agency action," much

---

[59] *Bennett v. Spear,* 520 U.S. 154, 178, 117 S. Ct. 1156, 137 L. Ed. 2d 281 (1997) (citations and quotations omitted).

[60] ECF No. 1 at ¶ 60.

[61] *Id.* at ¶ 20; First DOT ¶¶ 9(a), 9(d) (stating loan becomes due and payable in full upon the death of the Borrowers, and providing that HUD may begin foreclosure proceedings after thirty-day notice period).

[62] *Id.* at ¶¶ 39-42; ECF No. 1-9, Exhibit I.

[63] ECF No. 1-9 , Exhibit I (e-mail from Compu-Link on behalf of HUD stating, "We are alerting you to the action and are also conveying that *we will still work with the Estate or responsible party on a Loss Mitigation strategy, based on them taking immediate steps to resolve this matter*.") (emphasis added).

[64] *Id.*

less "final agency action."[65]

Even assuming for purposes of argument that Neilsen had alleged a final agency action, her APA claim would still fail. Nielsen's complaint does not contain any explanation, reasons or "factual enhancement" as to why HUD's actions are "arbitrary and capricious" or identify how HUD acted "without observance of procedure required by law."[66] HUD is within its right to foreclose on the lien and it has not operated outside its authority.[67] For these reasons, Plaintiff's APA cause of action should be dismissed for failure to state a claim.

### 3. Ultra Vires

A plaintiff may invoke the ultra vires exception to the federal government's sovereign immunity when a federal official's act exceeds his or her statutory authority.[68] The relevant question for determining whether there is an ultra vires claim is "whether the agency has gone beyond what Congress has permitted it to do. . . .[?]"[69] Here, because the assignment of the First

---

[65] *See e.g., Gingles v. United States Department of Housing and Urban Development,* 2022 U.S. Dist. LEXIS 207097, at *9 n. 6 (E.D. Mich. Nov. 15, 2022) (HUD's efforts to foreclose on property did not constitute "final agency action" under the APA).

[66] *See* 5 U.S.C. § 706(2)(A); 5 U.S.C. § 706(2)(D); *see also Iqbal,* 556 U.S. at 678 (citation omitted); *Twombly,* 550 U.S. at 444 (plaintiff must furnish "more than labels and conclusions or a formulaic recitation of the elements of a cause of action" in order to survive a Rule 12(b)(6) motion to dismiss).

[67] *See* 29 U.S.C. § 706(2)(C).

[68] *See Garfield County v. Trump,* 2026 U.S. App. LEXIS 18150, at *14 (10th Cir. June 2026) (citing *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 693, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949) (to establish an ultra vires claim plaintiff must plead "that the action to be restrained or directed is not action of the sovereign.")); *see also Wyoming v. United States,* 279 F.3d 1214, 1229 (10th Cir. 2002) (citing *Larson,* 337 U.S. 689-90).

[69] *City of Arlington, Texas v. F.C.C.,* 569 U.S. 290, 298, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013).

DOT to HUD was valid, there is no basis for Plaintiff's claimed ultra vires action against HUD for enforcing its interest in the First DOT. Further, Nielsen does not plead any facts to suggest the agency acted beyond its delegated power when it informed Plaintiff that HUD was initiating foreclosure proceedings. Given the validity of the assignment from MERS to HUD, as explained above, HUD was acting within it regulatory authority to initiate foreclosure proceedings on the Property and Nielsen's ultra vires claim should be dismissed.[70]

### 4. Declaratory Judgment

Finally, Nielsen seeks declaratory judgment pursuant to the Declaratory Judgment Act.[71] The Declaratory Judgment Act does not create an independent federal cause of action.[72] A request for declaratory relief is a remedy, and there is no need for a remedy to be included as a stand-alone claim.[73] Thus, Plaintiff's independent cause of action for declaratory judgment should be dismissed.

For all these reasons, the court recommends granting HUD's motion to dismiss Neilsen's claims against the United States Department of Housing and Urban Development and the Secretary of Housing and Urban Development.

### II. Compu-Link's Motion to Dismiss

Plaintiff identifies Compu-Link as a "mortgage loan servicer that administers and services HUD-insured Home Equity Conversion Mortgage ('HECM') reverse mortgages,

---

[70] *See* 24 C.F.R. § 206.125(d) ("Initiation of Foreclosure").

[71] ECF No. 1 at ¶¶ 66-71; 28 U.S.C. § 2201.

[72] *See Fletcher v. City of Hildale,* 2026 U.S. Dist. LEXIS 24027, at *6 (D. Utah Feb. 4, 2026).

[73] *Id.*

including the loan at issue."[74] Compu-Link moves for dismissal of Nielsen's complaint for failure to state a claim. The only cause of action Plaintiff brings against Compu-Link is for Declaratory Judgment.[75]

As stated in conjunction with the court's recommendation on HUD's motion for dismissal, declaratory relief is not an independent cause of action and Compu-Link's motion for dismissal may be granted on this basis alone.[76] Additionally, there are no factual allegations in Nielsen's complaint that allege Compu-Link violated an independent duty or acted outside the scope of its role as an agent for HUD.[77] Indeed, the entire thrust of Nielsen's argument is that the March 2024 Assignment to HUD is void and as a result HUD has no authority to foreclose upon the Property. Plaintiff admits it is HUD, not Compu-Link, that holds an interest in the Property alleging Compu-Link "does not hold, and has never held, any ownership interest in the promissory note or deed of trust encumbering the Property."[78]

Plaintiff does not link her request for declaratory relief against Compu-Link to a separate or independent causes of action for which Compu-Link could be liable and the complaint itself

---

[74] ECF No. 1 at ¶ 4.

[75] *Id.* at ¶¶ 66-71.

[76] *See supra* pp. 14-15; *see also Utah Housing Corporation v. Country Pines,* 541 F. Supp. 3d 1288 n.1 (D. Utah 2021) (citing *Aetna Life Insurance Company of Hartford, Connecticut v. Haworth,* 300 U.S. 227, 240, 57 S. Ct. 461, 81 L. Ed. 617 (1937) (a declaratory judgment is a remedy authorized by the federal Declaratory Judgment Act . . . but operation of the Act is "procedural only," and a declaratory judgment is a remedy, not an independent cause of action.")).

[77] *See generally,* ECF No. 1.

[78] *Id.* at ¶4.

does not seek to impose liability—only to avoid the lien on the Property. Yet, Compu-Link has no interest in the Property (quiet title) and is not a public agency (APA). Simply because Nielsen alleges that Compu-Link accelerated the debt, declared a default and initiated a foreclosure on behalf of HUD does not transform Compu-Link into a holder of an interest in the Property, or subject it to a lawsuit challenging HUD's rights to the Property.[79] As a result, the court recommends that Nielsen's claim against Compu-Link for Declaratory Judgment be dismissed for failure to state a claim.

### **RECOMMENDATION**

For the reasons set forth above, the undersigned RECOMMENDS that the District Court:

    1.  GRANT Defendant HUD's Motion to Dismiss for failure to state a claim;[80] and

    2.  GRANT Defendant Compu-Link's Motion to Dismiss for failure to state a claim.[81]

The Clerk's Office is directed to send copies of this Report and Recommendation to all parties who are hereby notified of their right to object.[82] The parties must file any objection to this Report and Recommendation within fourteen (14) days of service. Failure to object may constitution waiver of the objections upon subsequent review.

---

[79] *Id.*; *id.* at ¶¶ 32, 35-44, 45-48.

[80] ECF No. 28.

[81] ECF No. 29.

[82] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

DATED this 13th day of July, 2026.

BY THE COURT

_____

DUSTIN B. PEAD
Magistrate Judge
United States District Court